# IN THE UNITED STATES DISTRICT COURT
# THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> Plaintiff, § <br> § <br> v. § <br> § <br> ROCKY DEVURLE SHAW, § <br> Defendant. § | COURT NO. 4:03CR00061-001 |

## UNITED STATES' RESPONSE TO DEBTOR'S REQUEST FOR HEARING

Comes United States, Plaintiff, and responds to the debtor's Request for Hearing as to the Writ of Execution for the reasons stated below:

## I. BACKGROUND

Defendant Rocky Devurle Shaw ("Defendant") pled guilty to count 23 of the Second Superseding Indictment for Mail Fraud, 18 U.S.C. § 1341 on September 12, 2003. *See* Dkt. No. 46. Defendant Shaw was sentenced on June 17, 2004 to 18 months imprisonment, 5 years supervised release, $100.00 special assessment, $351,102.21 restitution and $20,000.00 fine. *See* Dkt. Nos. 59, 61. His supervised released was reduced from 5 years to 3 years. *See* Dkt. No. 63. To date, the defendant has paid a total of $18,094.93 toward his restitution debt. His last payment was made on April 23, 2014. His supervised release expired on or about November 20, 2008. Since that date, he has only paid $280.00 to the victims of his crime. His total outstanding balance, including his fine, is $353,107.28.

## II. SHAW OWNS SEVERAL LUXURY VEHICLES

During the government's investigation, it was learned that there were several high-end vehicles regularly parked in Rocky Shaw's residential driveway. Three of these vehicles displayed untitled dealer tags. Upon further investigation, it was determined that Rocky Shaw was acting as a dealer through Marshall Motors and had purchased high-end vehicles via the Manheim Dallas Auction in November of 2009:

 a. 2005 BMW, X Series, VIN: 5UXFA13575LY21587

 b. 2005 BMW, 3 Series, VIN: WBABD33455PL06250

 c. 2004 BMW, 3 Series, VIN: WBAEV33414KR34683

Vehicles a. and b. were the same vehicles seen repeatedly parked in Shaw's residential driveway this year. *See* Exhibit A, Declaration of Richard J. Lauria, former Senior Civil Investigator of the United States Attorney's Office, Financial Litigation Unit.

**A.     Shaw Owns 2001 Mercedes-Benz ML3, VIN: 4JGAB54EX1A282592**

Rocky Devurle Shaw was also in possession of a 2001 Mercedes-Benz ML3, VIN: 4JGAB54EX1A282592, which was last registered to his father, Burl B. Shaw, on or about July 1, 2010. Based on the Government's investigation, this vehicle does not appear to be currently registered. This is one of the vehicles on which Richard J. Lauria, former investigator of the U.S. Attorney's Office, Tyler, Texas, saw parked in Rocky Devurle Shaw's driveway with an untitled dealer tag.  The vehicle was titled in Burl Shaw's name in April of 2005 with a lien against it by Compass Bank dated 3/9/05. The lien against this vehicle was released November 24, 2009.

The instant offense was committed from April 1998 through September 2002. Shaw was indicted in April 2003 and pled guilty in September 2003. Shaw was sentenced in June 2004 and reported to the Bureau of Prisons in July 2004. Shaw was released from prison on or about November 18, 2005. Monthly supervision reports filed by Rocky Devurle Shaw with the United States Probation Office indicate the 2001 Mercedes-Benz ML3 has been in Rocky Devurle Shaw's possession since at least December of 2005. Shaw reported to Probation that he was making monthly payments for the 2001 Mercedes-Benz ML3 in the amount of approximately $424.00. In his financial statement to the United States Attorney's Office in April of 2009, Shaw reported a car payment of $424.00. Because Shaw has been in possession of the 2001 Mercedes-Benz ML3 for nearly nine years and because he paid for it himself, he has a substantial non-exempt interest in this vehicle despite keeping it registered in another person's name to avoid enforcement of his criminal restitution debt.

**B.  Shaw Purchased and Owns Two 2005 BMWs**

During the course of its investigation, the Government learned that Shaw purchased several luxury vehicles at dealer-specific auto auction. *See* Ex. A, Declaration of Richard Lauria. Since November of 2009, Shaw has had possession of the 2005 BMW BX5, VIN ending 1587, and the 2005 BMW 5CI, VIN ending 6250. He clearly did not make the purchases *for* Marshall Motors; if he had, those vehicles would have been sold by Marshall Motors, which is in the business of buying and selling cars. Instead, Shaw sold the 2005 BMW 5CI to Nena Harrison who failed to keep the payments current causing the vehicle to be repossessed by Rocky Shaw. *See id*. After Nena Harrison was

UNITED STATES V. ROCKY DEVURLE SHAW:
UNITED STATES' RESPONSE TO DEBTOR'S REQUEST FOR HEARING                                PAGE 3

served with the writ of execution, her husband, Gralen Harrison, notified the Government that Nena no longer owned the BMW because Rocky Shaw repossessed the car from her. *See* Exhibit B, Voicemail recording from Gralen Harrison dated October 20, 2014.

The 2005 BMW BX5, VIN ending 1587, appears to have been traded-in by Charles R. Nunemaker on or about November 6, 2009 to Ewing Autohaus in Plano, Texas. It was then signed over to Hopper Motorplex Inc. in McKinney, TX on November 9, 2009. It was then reassigned to Marshall Motors Inc. on November 18, 2009 which is the same date Rocky Shaw purchased it from the Dallas Auto Auction from Seller, Hopper Motorplex. *See* Ex. A, Declaration of Richard Lauria (explaining how Thomas Marshall brought Rocky Shaw to the auto auction to purchase vehicles). Thomas Marshall then signed the title over leaving the date of sale and the name of the purchaser blank. Rocky Shaw carried that vehicle home which is where the government found it. *See* Ex. C, Copy of the record of vehicle purchases made by Shaw through the Manheim Auctions Nationwide and a copy of the Texas Certificate of Title for the 2005 BMW BX5, VIN ending 1587, which shows each transfer from November 6, 2009 to November 18, 2009. Rocky Devurle Shaw, a/k/a Rockie Devurle Shaw, never bothered to have the vehicles lawfully registered with the State of Texas.

### III. GOVERNMENT EXECUTED ON SHAW'S VEHICLES

On September 5, 2014, the United States applied to the Court for a Writ of Execution for the following vehicles:

  a. Motor Vehicle – 2001 Mercedes ML 320, VIN: 4JGAB54EX1A282592

  b. Motor Vehicle – 2005 BMWT X5, VIN: 5UXFA13575LY21587

    c. Motor Vehicle – 2004 BMW 325I, VIN: WBAEV33414KR34683

    d. Motor Vehicle – 2006 Toyota Tundra, VIN: 5TBET34156S498941

The Writ was issued September 8, 2014. *See* Dkt. No. 72. The 2006 Toyota Tundra was not seized pursuant to the Writ of Execution because it was determined that the vehicle was registered to Reed Dayne Shaw. The 2004 BMW 325I, VIN: WBAEV33414KR34683 was erroneously listed in the Application for Writ of Execution. The actual vehicle seized was 2005 BMW 5CI, VIN: WBABD33455PL06250, Lic# BGH0447. An Application for Writ of Execution Nunc Pro Tunc was filed by the government on October 7, 2014 to correct this error. *See* Dkt. No. 75.

    Altogether, the USMS seized the following vehicles on October 3, 2014:

    a. 2001 Mercedes ML 320, VIN: 4JGAB54EX1A282592;

    b. 2005 BMWT X5, VIN: 5UXFA13575LY21587; and

    c. 2005 BMW 5CI, VIN: WBABD33455PL06250, Lic# BGH0447.

Rocky Devurle Shaw, Phyllis Shaw, and Reed Dayne Shaw were all personally served via the U.S. Marshal Service on October 3, 2014 with all documents related to the Writ of Execution. Nena Harrison was served at a later date. Rocky Shaw is the only person to have objected to the execution by requesting a hearing. As explained herein below, Shaw's request should be denied.

# IV. ARGUMENT

## A. The United States Properly Seeks Execution of Shaw's Property

### 1. The United States May Use Enforce a Victim Restitution Order by All Available Means.

The Mandatory Victim Restitution Act, ("MVRA"), provides that in sentencing a convicted criminal defendant, and "[n]otwithstanding any other provision of law," the court "shall order . . . that the defendant make restitution to the victim of the offense[.]" 18 U.S.C. § 3663A(a)(1). An order of restitution under the MVRA "shall be issued and enforced in accordance with section 3664." 18 U.S.C. § 3663A(d).

Section 3664 of Title 18, in turn, provides that "the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(a). Further, section 3664 authorizes the United States to enforce an order of restitution in the manner provided for in 18 U.S.C. § 3611 et seq., or "by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A); *see also*, 18 U.S.C. § 3613(f) ("In accordance with section 3664(m)(1)(A) of this title [18 U.S.C. § 3664 (m)(1)(A)], all provisions of this section are available to the United States for enforcement of an order of restitution."). Thus, as the Fifth Circuit stated in *United States v. Phillips*, the MVRA "provides the Government authority to enforce victim restitution orders in the same manner it recovers fines and by all other available means." 303 F.3d 548, 550-51 (5th Cir. 2002).

### 2. Pursuant to Section 3613 of Title 18, an MVRA Restitution Order Is Treated as a Tax Lien for Enforcement Purposes

The Government is authorized under 18 U.S.C. § 3613(a) to collect criminal fines and restitution in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law. *Phillips*, 303 F.3d at 551; 18 U.S.C. §3613(a). Section 3613 further provides that a judgment imposing a fine may be enforced against all property or rights to property of the person fined, unless the property falls within a limited set of exemptions. 18 U.S.C. § 3613(a).

Pursuant to Section 3613(c), an order of restitution under the MVRA is "a lien in favor of the United States on all property and rights to property of the person fined as if the liability of the person fined were a liability for a tax assessed under the Internal Revenue Code of 1986." 18 U.S.C. § 3613(c). This lien "arises on entry of judgment and continues for 20 years or until the liability is satisfied, remitted, set aside, or terminated[.]" *Id.* Thus, once a judgment containing a restitution order is entered, a lien *automatically arises* on all of the defendant's property and rights to property, and the lien is treated as a tax lien for purposes of enforcement.

Like a tax lien, this provision "defines broadly the property subject to attachment by the government" indicating "that Congress meant to reach every interest in property that a taxpayer might have." *Medaris v. United States*, 884 F.2d 832, at 833 (5th Cir. 1989). This lien attaches to a defendant's community property interest, even in community property that is solely held by the non-debtor spouse. *United States v. Loftis*, 607 F.3d 173, 178-79 (5th Cir.2010) (discussing TEX. FAM. CODE § 3.202(c)).

Accordingly, when the criminal judgment and victim restitution order were entered against Shaw, the United States' lien immediately attached to all of his property, including his personal property such as the automobiles made subject of this execution proceeding.

3. **The United States May Enforce an MVRA Restitution Order with the Execution Procedures in the FDCPA**

The federal procedure for enforcing civil judgments, made directly applicable to restitution orders through Section 3613(a), is set forth in the Federal Debt Collection Procedures Act ("FDCPA"), 28 U.S.C. §§ 3001, *et seq.* "The FDCPA provides the most effective means for the Government to enforce private victim restitution orders because it provides a uniform system for prosecutors to follow rather than resorting to the non-uniform procedures provided by the states." *Phillips*, 303 F.3d at 551.

Pursuant to section 3203 of the FDCPA, "[a]ll property in which the judgment debtor has a substantial nonexempt interest shall be subject to levy pursuant to a writ of execution." 28 U.S.C. § 3203(a). Property is defined under the FDCPA as:

> any present or future interest, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (including community property and property held in trust (including spendthrift and pension trusts)).

28 U.S.C. § 3002(12).

Section 3203 provides the necessary procedural steps to apply for a writ of execution. The United States properly followed these procedures in obtaining the writ of execution at issue and there is no allegation of any procedural shortcomings.

### B. Procedure for Objecting to and/or Requesting a Hearing to Challenge an FDCPA Execution

A writ of execution may be challenged by an individual or entity claiming an ownership interest in the property. *See United States v. Coluccio*, 842 F.Supp.663, 665 (E.D.N.Y.1994) (resolving a challenge to a writ of execution issued pursuant to the FDCPA where ownership of the subject property was in dispute), *vacated on other grounds*, 51 F.3d 337 (2d Cir.1995). In those circumstances, the burden of proving ownership of the subject property is borne by the claimant, not the judgment creditor. *Id.* The claimant must then prove ownership by providing some evidence of control over the subject property. *See United States v. One 1982 Porsche 928*, 732 F.Supp. 447, 451 (S.D.N.Y. 1990). Ultimately, the claimant must prove that his alleged interest in the property is superior to the judgment creditor's right to execute on the property. *United States v. West Indies Transp. Co., Inc.*, 57 F.Supp.2d 198, 203 (D.V.I. 1999).

Section 3202(d) of the FDCPA provides that a judgment-defendant may request a hearing in an execution proceeding only on the issues of:

> (1) the probable validity of any claim of exemption by the judgment debtor;
> (2) compliance with any statutory requirement for the issuance of the postjudgment remedy granted; and
> (3) if the judgment is by default and only to the extent that the Constitution or another law of the United States provide a right to a hearing on the issue, to -
>     (A) the probable validity of the claim for the debt which is merged in the judgment; and
>     (B) the existence of good cause for setting aside such judgment.

28 U.S.C. § 3202(d). Section 3613(a) states that a judgment imposing a fine may be enforced against all property or rights to property of the person fined, except for property

exempt from levy for taxes pursuant section 6334(a)(1), (2), (3), (4), (5), (6), (7), (8), (10), and (12) of the Internal Revenue Code of 1986. 18 U.S.C. § 3613(a); *see also* 26 U.S.C. §§ 6334(a)(1-8)(10)(12).

**C.     No Hearing Is Warranted Here**

To determine whether a hearing is warranted, the Court should decide whether Shaw has asserted legitimate grounds to be entitled to such a hearing. In his Petition requesting a hearing, Shaw raised none of the grounds that would allow for a hearing in this execution proceeding under 28 U.S.C. § 3202(d). He does not cite any of the specific limited exemptions, there is no allegation that the Government failed to comply with the statutory requirements, and this is not a matter of judgment by default. Shaw's failure to cite any exemptions or grounds that would allow him a hearing under 28 U.S.C. § 3202(d) should be sufficient reason to deny his hearing request.

Given Shaw's assertions that he does not own the property, there may be a question as to whether Shaw has standing to challenge the execution. As explained above, only a person claiming an ownership interest in the property may challenge a writ of execution. *Coluccio*, 842 F.Supp. at 665. Despite his actual possession, custody, and control of the subject vehicles parked in his driveway, Shaw claims that the vehicles are not his. And despite disavowing ownership of the vehicles parked at his home, Shaw does not identify the vehicles' true owners. If the vehicles are indeed owned by other people, those people would have been the proper parties to challenge this execution.

Yet no one other than Shaw has come forward to challenge this enforcement action. The other people that live at the residence with him—Phyllis Shaw and Reed

Dayne Shaw—did not request a hearing to challenge this execution after they were served, and it is now too late for them to do so. *See* 28 U.S.C. § 3202(d)(a party seeking a hearing to challenge enforcement must make request within 20 days after receiving the notice of enforcement). Given that the subject vehicles were located in Shaw's driveway at his residence and are subject to his management, control, and disposition, they are presumed to be his property.

Moreover, the Government has proven probable cause that the vehicles *are* Shaw's property and are therefore subject to execution. *See* Exs. A, B, C; *see also Coluccio*, 842 F.Supp. at 666 (analogizing FDCPA execution determination of property ownership to probable-cause standard employed for civil forfeiture matters). Shaw has not disproven ownership. Because Shaw cited no exemptions and provided no valid grounds to challenge this execution, his hearing request should be denied. *See*, *e.g.*, *United States v. Bank of America,* 2011 WL 1483716, at *4-5 (E.D.Tex. March 28, 2011)(denying hearing request in FDCPA proceeding where judgment debtor failed to raise valid grounds under 28 U.S.C. § 3202).

D.  **Alternatively, Hearing Should Not Occur Until After November, 2014**

If the Court finds that Shaw has presented legitimate grounds for a hearing, the Government respectfully requests that the hearing not be set until after November 5, 2014. Defendant Rocky Devurle Shaw, a/k/a Rockie Devurle Shaw, his spouse Phyllis Shaw, and his son Reed Dayne Shaw have been served with subpoenas duces tecum to take their testimony at depositions on November 5, 2014 at the United States Attorney's

Office in Plano, Texas. Previous efforts to serve Rocky Shaw with Subpoenas via the U.S. Marshal Service have been evaded by Rocky Shaw.

      WHEREAS the United States prays that Shaw's request for hearing be denied or, in the alternative, that any hearing be set after the scheduled depositions.

      Respectfully submitted,

      JOHN M. BALES
      UNITED STATES ATTORNEY

      */s/ Robert Austin Wells /s/*
      Robert Austin Wells
      Assistant U.S. Attorney
      State Bar No. 24033327
      110 N. College, Suite 700
      Tyler, Texas 75702
      Tel:   (903) 590-1400
      Fax:  (903) 590-1437
      Email: robert.wells3@usdoj.gov

# CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of October, 2014, a true and correct copy of the United States' Response to Debtor's Request for Hearing has been served to all counsel of record by the Court's CM/ECF electronic filing system and by first class mail, postage prepaid, addressed to:

Rocky Devurle Shaw
███████
Dallas, Texas ███
JUDGMENT-DEFENDANT

Phyllis Shaw
███████
Dallas, Texas ███
JUDGMENT-DEFENDANT'S SPOUSE

Reed Dayne Shaw
d/b/a Quest Environmental
███████
Dallas, Texas ███
JUDGMENT-DEFENDANT'S SON

Nena Harrison
███████
Dallas, Texas ███

*/s/ Robert Austin Wells /s/*
Robert A. Wells
Assistant United States Attorney